Marie Emily **FLANAGAN**, Daughter and Executrix of the Estate of Pauline C. Mott, Petitioner,

v.

**RAILROAD RETIREMENT BOARD**, Respondent.

No. 14508.

United States Court of Appeals Third Circuit.

Argued Jan. 7, 1964.

Decided May 19, 1964.

Bernard N. Katz, Philadelphia, Pa., for petitioner.

Myles F. Gibbons, Chicago, Ill. (David B. Schreiber, Associate Gen. Counsel, Railroad Retirement Bd., Richard F. Butler, Chicago, Ill., Railroad Retirement Bd., of counsel, on the brief), for respondent.

Before STALEY, HASTIE and SMITH, Circuit Judges.

STALEY, Circuit Judge.

This is a petition for review of a decision of the Railroad Retirement Board denying a claim under 45 U.S.C. § 228c (f) (1) (1958 ed.) for retirement annuities alleged to have become due a railroad employee but which were not paid at the time of his death. The original claim was filed on April 12, 1960, by Mrs. Pauline C. Mott, widow of the employee, Charles P. Mott. That portion of the claim involved in this petition for review was denied by the Bureau of Retirement Claims on December 5, 1960. The Appeals Council affirmed that decision on September 5, 1961. However, in the meantime, Mrs. Mott had died on August 16, 1961. On September 25, 1961, the petitioner, Mrs. Flanagan, daughter of Mrs. Mott and stepdaughter of the employee, attempted to appeal the decision of the Appeals Council to the Board as executrix of the estate of Mrs. Mott. After a good deal of correspondence, Mrs. Flanagan was permitted to file an application for benefits directly with the Board on March 23, 1962, in which she stated that she was the employee's stepdaughter and, in a covering letter, requested that the Board make the initial and final administrative decision in the matter. The Board denied her claim on July 5, 1962, and this petition for review followed.

The facts relevant to the merits of the claim of Mrs. Flanagan, though intriguing, require only brief statement here in the light of our view of the case. The employee began receiving retirement annuities in 1947 when he was sixty-seven years of age. On October 10, 1952, his daughter, Mrs. Dorothy Mingle, wrote a letter to the Board in which she stated that her father had been living with her until December of the preceding year, "at which time he left my home and, believe it or not, has been riding on the trains night and day since then." The Board thereupon suspended the annuity payments, and, except for the statement of a railway union official who said that he had seen the employee in a railroad station in Baltimore, Maryland, in January, 1953, the whereabouts of Mr. Mott were never thereafter discovered.

In April, 1960, the attorney for Mrs. Mott submitted to the Board a copy of a "Decree of Presumption of Death," issued by the Register of Wills for Sussex County, Delaware, which declared "Charles P. Mott is legally presumed to be dead as of this 12th day of April, 1960." In addition, a claim was made for retirement checks due but unpaid to that date. We have already summarized the Board's treatment of that claim. Despite the decree of presumption of death, the Board held that the employee died "shortly after he was last seen by Mr. Park [the union official] on January 5, 1953, and that he died before February 1, 1953. In any event, since Mrs. Flanagan has failed to establish that the employee died later than January, 1953, she has not substantiated her claim that annuities accrued to him after that date, and therefore has failed to establish her claim before the Board." The Board acknowledged that a contrary decision was reached in Tobin v. United States Railroad Retirement Board, 286 F.2d 480 (C.A.6, 1961).

In this court the major portion of the briefs of the parties is devoted to the provocative question of the burden of proof as to the date of the employee's death. Indeed, this is the only question discussed in the brief of the petitioner. However, after setting forth the relevant section of the statute, the Board further held that "if there were any unpaid annuities due the employee which Mrs. Mott did not receive before she died, such annuities would have been payable to certain individuals specified in Section 3(f) (1) of the Act, and not to Mrs. Mott's estate. Moreover, as Mrs. Flanagan is the em-

ployee's stepdaughter, she is not one of the individuals specified in Section 3(f) (1) of the Act, and such annuities could not be paid to her."

[1] Section 3(f) (1) of the Railroad Retirement Act provides:

"Annuities under section 228b(a) of this title which will have become due an individual but will not have been paid at the time of such individual's death shall be payable to the person, if any, who is determined by the Board to be such individual's widow or widower and to have been living with such individual at the time of such individual's death and who will not have died before receiving payment of such annuities. If there be no such widow or widower, such annuities shall be payable to any person or persons, equitably entitled thereto, to the extent and in the proportions that he or they shall have paid the expenses of burial of such individual, and to the extent that he or they will not have been reimbursed under section 228e(f) (1) of this title for having paid such expenses. If there be no person or persons so entitled, or if the total of such annuities exceeds the amount payable under this paragraph to such person or persons, such total, or the remainder thereof, as the case may be, shall be paid to the children, grandchildren, parents, or brothers and sisters of the deceased individual in the same manner as if such unpaid annuities were a lump sum payable under section 228e(f) (2) of this title." 45 U.S.C. § 228c(f) (1) (1958 ed.).

This section makes it clear that accrued annuities are payable to the widow of the employee only if she "will not have died before receiving payment of such annuities." No payment is authorized to the estate of the widow, for the Act specifically requires that if she dies before receiving payment the annuities shall be payable to other designated beneficiaries. Such a provision is not unusual in legislation of this kind which is intended to benefit a particular person or persons with some defined relationship to the deceased employee, but not to benefit the estate or creditors of that person or persons. Thus, an identical provision is contained in § 5(f) (1) and (2) of the Act, 45 U.S.C. § 228e(f) (1) and (2), covering lump-sum payments to survivors. That section is incorporated by reference in § 3(f) (1), to provide for the manner of payment of accrued annuities to persons other than the widow or widower of the deceased employee.

■ The only question remaining is whether Mrs. Flanagan is entitled to the accrued unpaid annuities, assuming there are such, as one of the "children" of Mr. Mott. But it is undisputed that Mrs. Flanagan was merely a stepchild of the employee. A stepchild is defined as "the child of one of the spouses by a former marriage." Black's Law Dictionary, 4th ed. (1951). Such a person is not, in contemplation of law, one of a designated individual's "children" in the absence of a statutory declaration to that effect. There is no such declaration in this section of the Railroad Retirement Act.[1]

The decision of the Railroad Retirement Board will be affirmed.

---

1. We note that 45 U.S.C. § 228e(*l*) defines "child" for the purposes of § 228e by incorporating the definition contained in the Social Security Act, which would include a stepchild, but requires further that the child shall have been dependent upon the deceased employee, and shall be unmarried and under eighteen years of age or have a permanent physical or mental impairment. Since that definition is specifically declared inapplicable to § 228e(f), we have given the term its ordinary legal meaning.