Justice Beth Baker delivered the Opinion of the Court.
***327 ¶1 Brian Richardson filed a Petition for Hearing with the Workers' Compensation Court in July 2013, arguing that he was entitled to have Indemnity Insurance Company of North America ("Indemnity") accept his claim for workers' compensation benefits. Indemnity had denied his claim on the grounds that he had failed to provide his employer timely notice and that his claim filed almost four years after the alleged accident was untimely. The Workers' Compensation Court granted summary judgment to Indemnity, holding that Richardson had failed to give timely notice and that he had failed to timely file his claim. Richardson raises numerous issues on appeal, but we affirm on the following issue:
Whether the Workers' Compensation Court held correctly on summary judgment that Richardson had not timely filed a written ***328 claim for benefits under § 39-71-601, MCA (2005).
Given our disposition of this issue, we decline to reach the other issues Richardson raises.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 On November 29, 2006, Richardson worked the graveyard shift at the Billings Clinic as a security guard for Securitas. At about 1:25 a.m., Richardson and other security guards responded to an altercation involving a psychiatric patient in the emergency department. Restraining violent patients was within the course and scope of Richardson's employment as a security guard. Afterwards, Richardson and his fellow guards noted the altercation in their Daily Activity Report as follows:
*1021 ?
The first two lines in the activity column state: "STAT ED #12, Pt out of control when told by Pysch Dr. had to stay, tried fighting way out, had to restrain." Each of the remaining four lines begins with the initials of the security guards that were involved in restraining the patient. The entry regarding Richardson states: "BR = Hits = 5 (mouth upper) ribs, stomach Missed = 3." Richardson's shift supervisor wrote the description of the incident and Richardson filled in the details of where he was hit. Richardson initialed the Daily Activity Report in the lower right-hand box along with his colleagues, indicating that he reviewed the report. Richardson attested that the day after the altercation he told Ron Berglund, the site manager, that the patient's elbow had hit him in the nose. Richardson attested that Berglund told him that he did not need to fill out additional paperwork unless he was seeking medical treatment. Richardson did not file additional paperwork at that time. Richardson left Securitas for a position with another company in June 2008.
¶3 On June 17, 2008, Richardson saw Dr. Cynthia Kennedy for an ***329 evaluation of his chronic headaches and nasal obstruction. Dr. Kennedy attributed Richardson's symptoms to a nasal fracture from the 2006 incident. Richardson attested that this is the first time he had medical confirmation that a blow to his nose during work in November 2006 was the cause of his symptoms. Dr. Kennedy performed surgery on June 25, 2008. In August or September 2008, Richardson learned that his private insurance would not pay for the entire surgery, and he approached his former supervisors at Securitas about filing a workers' compensation claim. Richardson attested that Mike Anderson, the Securitas branch manager, told him it was too late to file a claim at that time.
¶4 Richardson attested that he had to stop working in September 2010 due to symptoms related to the 2006 injury to his nose. He filed a First Report of Injury with Securitas in October 2010, seeking workers' compensation benefits. His former employer's insurance, Indemnity, denied the claim due to lack of notice and untimely filing.
¶5 Richardson filed a petition for hearing with the Workers' Compensation Court in July 2013, arguing that he was entitled to acceptance of his claim. Richardson moved for summary judgment on the issues of timely notice under § 39-71-603(1), MCA (2005),[1] and timely claim filing under § 39-71-601, MCA (2005). Indemnity filed a cross-motion for summary judgment on the ground that, because Richardson had filed his First Report of Injury nearly four years after the alleged incident, Richardson had failed to file a claim for compensation within the thirty-six-month time period prescribed by § 39-71-601, MCA (2005). The Workers' Compensation Court issued two orders in response to the motions. In its first order, the Workers' Compensation Court denied Richardson's motion regarding timely notice, explaining that there were disputed issues of material fact regarding whether Richardson was injured during the 2006 altercation and, regardless, that Richardson had failed to submit notice within thirty days of learning of his injury in 2008. In its second order, the Workers' Compensation Court denied Richardson's motion regarding timely claim filing and granted Indemnity's cross-motion on the same. The District Court explained that the Daily Activity Report was insufficient to be considered a claim under § 39-71-601(1), MCA (2005), and that Richardson filed his *1022 First Report of Injury after the statute's absolute deadline of thirty-six months from the date of the happening ***330 of the accident.
STANDARDS OF REVIEW
¶6 We review a grant of summary judgment de novo. Dvorak v. Mont. State Fund , 2013 MT 210, ¶ 15, 371 Mont. 175, 305 P.3d 873. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Dvorak , ¶ 15. We review legal conclusions for correctness. Dvorak , ¶ 15.
DISCUSSION
¶7 Whether the Workers' Compensation Court held correctly on summary judgment that Richardson had not timely filed a written claim for benefits under § 39-71-601, MCA (2005).
¶8 Richardson first argues that the Daily Activity Report was sufficient to meet the claim filing requirements of § 39-71-601, MCA (2005). He maintains, however, that if the Daily Activity Report was not sufficient then the time period for filing his claim should be tolled under the principle of equitable estoppel or because he did not have knowledge of his disability until he had to stop working in 2010.
¶9 Richardson relies on two cases to support his argument that the Daily Activity Report met the requirements for filing a claim under § 39-71-601(1), MCA (2005): Scott v. Utility Line Contractors , 226 Mont. 154, 734 P.2d 206 (1987), and Weigand v. Anderson-Meyer Drilling Co. , 232 Mont. 390, 758 P.2d 260 (1988). Richardson maintains that the Daily Activity Report provided sufficient information for Securitas to investigate a claim and prepare a defense.
¶10 Section 39-71-601(1), MCA (2005), states:
(1) Except for a claim for benefits for occupational diseases pursuant to subsections (3) and (4), all claims in the case of personal injury or death must be forever barred unless signed by the claimant or the claimant's representative and presented in writing to the employer, the insurer, or the department, as the case may be, within 12 months from the date of the happening of the accident, either by the claimant or someone legally authorized to act on the claimant's behalf.
¶11 In Scott , the injured worker went to the emergency room for an injury to his right arm and shoulder three days after an incident at work. He had the bill and medical report sent to the Workers' Compensation Division, and the State Fund paid the bill. Several weeks later, Scott assisted his supervisor in completing the employer's first report form, but he did not file the standardized workers'
***331 compensation claim form from the Workers' Compensation Division for the injury. The employer's first report included his name, social security number, address, date of birth, and wages; information about how the accident occurred and how he was injured; the name of a witness; the name of the physician and the place the injury was treated; and information about the employer. The State Fund alleged that Scott had failed to file a claim within one year, because he had not filed the standardized workers' compensation claim form. We held that Scott presented his claim within one year, because the report "contained ample information to clearly inform the employer and the division of the nature and basis of Mr. Scott's possible claim," and the "medical report prepared three days after the injury also gave indications that a claim could likely result out of this injury." Scott , 226 Mont. at 157, 734 P.2d at 208.
¶12 In Weigand , the injured worker injured his knee when he fell at work in 1982, requiring surgery. Weigand immediately returned to work after surgery on his knee. Weigand and his employer completed and filed the employer's first report with the insurer. Weigand's surgeon also filed a physician's first report, and the surgeon and hospital submitted their bills to the insurer, which the insurer paid. Weigand did not file the standardized workers' compensation claim form from the insurer. Weigand was unable to continue working in any of his former occupations by 1985 due to complications with his knee. The insurer denied Weigand's *1023 claim for additional benefits, arguing that he had not filed the claim within one year. The Court held that filing the standardized workers' compensation claim form was not the exclusive method for filing a claim. The Court explained that, similar to Scott , the employer's first report and the medical report from his surgeon provided the insurer with "ample information to be informed of the nature and the basis of Weigand's possible claim." Weigand , 232 Mont. at 394, 758 P.2d at 262. The Court explained that the employer and insurer had received "information in writing[,] which gave all the details that a further form" from Weigand would have given. Weigand , 232 Mont. at 394, 758 P.2d at 262. The object of the statute is "to give the employer written notice of a worker's claims within twelve months of the injury or accident in order to allow the employer to investigate the claim and if necessary prepare a defense," and that object was achieved. Weigand , 232 Mont. at 394, 758 P.2d at 262.
¶13 Scott and Weigand are readily distinguishable. Unlike the injured workers in those cases, Richardson did not seek medical care for his alleged injuries within twelve months. He and his employer did not complete or file the first report of injury with the insurer. The ***332 Daily Activity Report that Richardson and his colleagues initialed provides almost none of the information described in Scott . It does not even contain Richardson's full name or indicate that he was in fact injured in the altercation. Further, Richardson's claim is that his injury was caused by a blow to his nose, but the body parts listed after "BR = Hits = 5" does not list Richardson's nose. Though the statute does not require an injured worker to use a specific claim form, the documents provided to make a claim must "contain[ ] ample information to clearly inform the employer ... of the nature and basis of [a] possible claim." See Scott , 226 Mont. at 157, 734 P.2d at 208. The six lines of the Daily Activity Report, identifying the initials of four employees involved in the incident, contain no information indicating that anyone, including Richardson, was injured in the altercation, much less that he suffered a potential compensable injury. Securitas was not put on notice that it should "investigate the claim and if necessary prepare a defense." Weigand , 232 Mont. at 394, 758 P.2d at 262. The Daily Activity Report does not constitute a claim under § 39-71-601, MCA (2005).
¶14 Richardson argues that if the Daily Activity Report is not a written claim, then the filing period should be tolled, both under principles of equitable estoppel and because he lacked knowledge of his disability. Richardson avers that his supervisor told him the day after the altercation that he did not need to fill out workers' compensation paperwork unless he was seeking treatment, which Richardson maintains is a misstatement of law. Further, Richardson relies on Tinker v. Montana State Fund , 2009 MT 218, 351 Mont. 305, 211 P.3d 194, to argue that he did not know he was disabled until he suffered wage loss from his injury when he had to leave his job in 2010 due to his symptoms. He maintains that his First Report of Injury filed in October 2010 was timely.
¶15 Indemnity counters that Richardson's arguments fail on the merits, but that even if Richardson's claim were tolled under § 39-71-601(2), MCA (2005), his claim still was filed too late. Indemnity argues that subsection (2) extends the twelve-month filing period up to an additional twenty-four months for a maximum of thirty-six months. Richardson filed his claim in October 2010, more than thirty-six months after the accident in question. We agree.
¶16 Section 39-71-601(2), MCA (2005), states:
(2) The insurer may waive the time requirement up to an additional 24 months upon a reasonable showing by the claimant of:
(a) lack of knowledge of disability;
***333 (b) latent injury; or
(c) equitable estoppel.
¶17 What is now § 39-71-601(1), MCA, was first enacted in 1915. See 1915 Mont. Laws ch. 96, § 10. It provided, "In case of personal injury or death, all claims shall be forever barred unless presented within six months from the date of the happening of the accident." 1915 Mont. Laws ch. 96, § 10. The only *1024 tolling the statute allowed was for mentally incompetent or minor injured workers without guardians. 1915 Mont. Laws ch. 96, § 10.
¶18 Despite the "forever barred" language of the statute, this Court first recognized an equitable estoppel exception to the limitations period in Lindblom v. Employers' Liability Assurance Corp. , 88 Mont. 488, 295 P. 1007 (1930). The version of the statute interpreted in Lindblom contained no exceptions to the statutory time limit on filing a claim other than those for the mentally incompetent or minors. This Court concluded that the Workers' Compensation Act was enacted for the benefit of the employee, but the section limiting the time within which a claim could be made was designed for the benefit of the employer. Lindblom , 88 Mont. at 498, 295 P. at 1010. The Court reasoned that the employer or insurance carrier could waive the benefit of that section through equitable estoppel. Lindblom , 88 Mont. at 498, 295 P. at 1010. Applying Lindblom , this Court explained in Ricks v. Teslow Consolidated , 162 Mont. 469, 481, 512 P.2d 1304, 1311 (1973), that "the doctrine of estoppel [applies] only where there have been affirmative acts before the statutory period has run which either prevent the claimant from filing or lead him to believe he need not do so."
¶19 That same year, the Legislature added what is now subsection (2)(a), "lack of knowledge of disability," as an exception to the one-year filing requirement, allowing "up to an additional 24 months" to file a claim. See 1973 Mont. Laws ch. 264, § 1. In Bowerman v. Employment Security Commission , 207 Mont. 314, 318-19, 673 P.2d 476, 478 (1983), this Court determined that the "lack of knowledge of disability" described in subsection (2) and its twenty-four-month extension limitation did not apply to latent injuries. The Court explained that it "would prefer a specific enactment by the legislature of a statute of limitations relating to latent injury claims." Bowerman , 207 Mont. at 319, 673 P.2d at 478. Citing this Court's decision in Johnson v. St. Patrick's Hospital , 148 Mont. 125, 417 P.2d 469 (1966), in which the Court's decision "had the effect of prodding the legislature into providing expressly for an extended period of limitations," and its duty to interpret the provisions of the Workers' Compensation Act liberally, ***334 this Court held that "in cases of latent injury, ... the time period for notice of claim does not begin to run until the claimant as a reasonable man, should recognize the nature, seriousness and probable, compensable character of his latent injury." Bowerman , 207 Mont. at 319, 673 P.2d at 479.
¶20 The Legislature did act after our decision in Bowerman . It added two more exceptions to toll the statute-latent injury and equitable estoppel-and applied the same twenty-four-month limitation it applied to lack of knowledge of disability. See 1989 Mont. Laws ch. 254, § 1. The statute in force at the time of Richardson's injury, § 39-71-601(2) MCA (2005), thus provided for "an additional 24 months upon a reasonable showing by the claimant of: (a) lack of knowledge of disability; (b) latent injury; or (c) equitable estoppel."
¶21 We must read § 39-71-601, MCA (2005), in its entirety. Subsection (1) maintains the same strong language first adopted in 1915: all claims "must be forever barred" unless filed "within 12 months from the date of the happening of the accident." Subsection (2) specifies exceptions allowing "[t]he insurer" to "waive the time requirement up to an additional 24 months upon a reasonable showing by the claimant of" one of three enumerated grounds: "(a) lack of knowledge of disability; (b) latent injury; or (c) equitable estoppel." Subsection (3) applies to claims for occupational disease and is not applicable here. Subsection (4) vests the Workers' Compensation Court with jurisdiction over "[a]ny dispute regarding the statute of limitations for filing time," thus recognizing that the parties may raise disputes of fact or law regarding the application of subsection (2)'s three exceptions.
¶22 Since Bowerman , the Legislature explicitly has provided for the filing period to be tolled for twenty-four months-not only for lack of knowledge of disability, but also for latent injuries and for equitable estoppel. Bowerman was decided in 1983; "prior to the overhaul of the workers' compensation statutes in 1986, rules of liberal construction guided the courts in interpreting [the] Workers'
*1025 Compensation Act." Hardgrove v. Transp. Ins. Co. , 2004 MT 340, ¶ 30, 324 Mont. 238, 103 P.3d 999 (Cotter, J., dissenting). We no longer liberally construe the Worker's Compensation Act in favor of the worker; rather, the act "must be construed according to its terms and not liberally in favor of any party." Section 39-71-105(5), MCA (2005). Read as a whole, the plain language of § 39-71-601, MCA (2005), allows the period of limitations to be extended no longer than twenty-four months for those three enumerated grounds-for a total limitations period of thirty-six ***335 months.
¶23 Workers' compensation law is statutory. The parameters of the law are defined by the Legislature, limited only by constitutional restraints.[2] Over the years, the Legislature has incorporated exceptions to the twelve-month statute of limitations, but has limited tolling for the enumerated exceptions to an additional twenty-four months. We apply the statute as written.
¶24 Richardson's reliance on Tinker to argue that the limitations period is tolled until he suffered wage loss in 2010 is misplaced. The injured worker in Tinker filed his claim about two years after the accident at work occurred. Tinker , ¶ 6. Richardson filed his claim almost four years after the incident in question. This is more than the thirty-six months provided for in the statute for lack of knowledge of disability. Thus, Indemnity properly rejected coverage for his claim as "forever barred."
¶25 Richardson also challenges the Workers' Compensation Court's holding that he did not provide timely notice to Securitas. Section 39-71-603, MCA (2005), requires a worker to provide "notice of the time and place where the accident occurred and the nature of the injury" to the employer or insurer within thirty days of the incident alleged to have caused the injury. This notice requirement "is a separate and distinct statutory time requirement" from the twelve-month period of limitations to file a claim under § 39-71-601, MCA (2005). Siebken , ¶ 17. To bring a workers' compensation claim, an injured worker must comply with both §§ 39-71-601 and -603, MCA (2005). Because we hold that Richardson failed to file a timely written claim under § 39-71-601, MCA (2005), we decline to address his arguments regarding the timeliness of his notice under § 39-71-603, MCA (2005).
CONCLUSION
¶26 The orders of the Workers' Compensation Court are affirmed.
We Concur:
MIKE McGRATH, C.J.
JIM RICE, J.
INGRID GUSTAFSON, J.
LAURIE McKINNON, J.

We apply the statutes in effect at the time the alleged injury occurred. See Siebken v. Liberty Mut. Ins. Co. , 2008 MT 353, ¶ 10, 346 Mont. 330, 195 P.3d 803.

In his reply brief, Richardson argues that this interpretation of § 39-71-601(2), MCA (2005), treats the statute as a date-certain statute of repose. He argues that such an interpretation would constitute a violation of his constitutional right to equal protection, citing Henry v. State Compensation Insurance Fund , 1999 MT 126, 294 Mont. 449, 982 P.2d 456. However, we will not address an argument raised for the first time in a reply brief. See M. R. App. P. 12(3) ("The reply brief must be confined to new matter raised in the brief of the appellee.").